UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


RYAN BURKE,

        Plaintiff,                                      Hon. Ellen S. Carmody

v.

                                                   Case No. 1:13-cv-611

COMMISSIONER OF
SOCIAL SECURITY,

        Defendant.
_____/

## **OPINION**

This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) under Titles II and XVI of the Social Security Act. On August 14, 2013, the parties agreed to proceed in this Court for all further proceedings, including an order of final judgment. (Dkt. #12).

Section 405(g) limits the Court to a review of the administrative record and provides that if the Commissioner's decision is supported by substantial evidence it shall be conclusive. The Commissioner has found that Plaintiff is not disabled within the meaning of the Act. For the reasons stated below, the Court concludes that the Commissioner's decision is not supported by substantial evidence. Accordingly, the Commissioner's decision is **reversed and this matter remanded for further factual findings pursuant to sentence four of 42 U.S.C. § 405(g)**.

**STANDARD OF REVIEW**

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984).

As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial

interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

Plaintiff applied for DIB benefits on July 24, 2006, alleging that he had been disabled since July 13, 2006, due to depression, joint stiffness, and back pain. (Tr. 250-54). Plaintiff was 43 years of age on his alleged disability onset date. (Tr. 250). He possesses a tenth-grade education and worked previously as a janitor. (Tr. 21, 82). Plaintiff's application was denied, after which time he requested a hearing before an Administrative Law Judge (ALJ). (Tr. 115-241). On May 21, 2009, Plaintiff appeared before ALJ Terry Miller with testimony presented by Plaintiff and a vocational expert. (Tr. 31-76). In a written decision dated July 22, 2009, the ALJ determined that Plaintiff was not disabled. (Tr. 123-34).

Plaintiff appealed the matter to the Appeals Council, but before a decision on such was rendered, Plaintiff submitted an application for SSI benefits in which Plaintiff alleged that he had been disabled since March 26, 2007. (Tr. 255-59, 265). The Appeals Council subsequently remanded the matter for further consideration. (Tr. 135-39). On September 27, 2011, ALJ Paul Jones conducted a second administrative hearing at which Plaintiff and a vocational expert testified. (Tr. 77-114). In a written decision dated November 10, 2011, the ALJ determined that Plaintiff was not disabled. (Tr. 11-23). The Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision in the matter. (Tr. 1-4). Plaintiff subsequently

3

initiated this appeal pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

Plaintiff's insured status expired on December 31, 2009. (Tr. 13). Accordingly, to be eligible for Disability Insurance Benefits under Title II of the Social Security Act, Plaintiff must establish that he became disabled prior to the expiration of his insured status. *See* 42 U.S.C. § 423; *Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990).

## **RELEVANT MEDICAL HISTORY**

On January 22, 2006, Dr. Lawrence Domino completed a Psychiatric Review Technique form regarding Plaintiff's mental limitations. (Tr. 551-64). Determining that Plaintiff suffered from depression, the doctor concluded that Plaintiff satisfied the Part A criteria for Section 12.04 (Affective Disorders) of the Listing of Impairments. (Tr. 552-60). The doctor determined, however, that Plaintiff failed to satisfy any of the Part B criteria for this particular Listing. (Tr. 561). Specifically, the doctor concluded that Plaintiff experienced mild restrictions in the activities of daily living, moderate difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence or pace, and never experienced extended episodes of decompensation. (Tr. 561).

Dr. Domino also completed a Mental Residual Functional Capacity Assessment form regarding Plaintiff's limitations in 20 separate categories encompassing (1) understanding and memory, (2) sustained concentration and persistence, (3) social interaction, and (4) adaptation. (Tr. 565-68). Plaintiff's abilities were characterized as "moderately limited" in six categories. (Tr. 565-66). With respect to the remaining 14 categories, however, the doctor reported that Plaintiff was either "not significantly limited" or that there existed "no evidence of limitation." (Tr. 565-66).

Treatment notes dated February 15, 2006, indicate that Plaintiff was suffering from polycythemia.[1] (Tr. 343). The doctor reported that he was unable to determine whether Plaintiff was experiencing "primary" or "secondary" polycythemia because Plaintiff had failed to stop smoking. (Tr. 343).

On May 1, 2006, Plaintiff participated in an MRI examination of his lumbar spine the results of which revealed "small central L5-S1 disc protrusion without root compression or spinal stenosis." (Tr. 373). X-rays of Plaintiff's right knee, left knee, right shoulder, left shoulder, and bilateral hips, taken May 23, 2006, were all "normal." (Tr. 363-67). Treatment notes dated May 24, 2006, indicate that Plaintiff was again "advised to quit smoking" because such was negatively impacting his polycythemia. (Tr. 342).

On June 16, 2006, Plaintiff was examined by Dr. Satish Solanki (Tr. 353-54). Plaintiff reported that he was experiencing pain in his knees, shoulders, and lower back which "usually ranges 8 to 9 out of 10." (Tr. 353). A musculoskeletal examination revealed the following:

> His gait was normal and stable. Grip strength is normal in both hands. Muscle power is normal in proximal and distal muscle groups. He is able to get up from the chair and climb upon the exam table without any difficulty. He has no palpable synovitis over his hands, wrists, elbows, ankle, feet, or knee joints. There is no abnormal joint effusion. He complained of tenderness upon palpation mainly over the left shoulder and around both knees. Left shoulder is also having mild crepitations and passive abduction of the shoulder is associated with the pain after taking the arm above the shoulder level. Rest of the musculoskeletal exam is unremarkable.

(Tr. 353).

---

[1] Polycythemia (or polycythemia vera) is "a slow-growing type of blood cancer in which your bone marrow makes too many red blood cells." *See* Polycythemia vera, available at http://www.mayoclinic.org/diseases-conditions/polycythemia-vera/basics/definition/con-20031013 (last visited on September 22, 2014). Polycythemia vera "isn't common" and "[w]ithout treatment, polycythemia vera can be life-threatening." However, "with proper medical care, many people experience few problems related to this disease." *Id.*

The results of various laboratory tests, including a rheumatoid factor test, were negative. (Tr. 353). The doctor concluded as follows:

> Polyarthralgias, which is mainly psychosomatic in nature. As per the clinical examination and the lab tests, there is no evidence suggestive of underlying inflammatory condition. His fatigue is most likely due to insomnia, which is again associated with psychosomatic condition. Other possibility could be obstructive sleep apnea syndrome for which he should be worked up and that is deferred to his primary care provider. Degenerative disk disease of lumbosacral spine for which he is being seen by the neurosurgeon. Possible left shoulder tendonitis.

(Tr. 354).

On October 27, 2006, Blaine Pinaire, Ph.D. completed a Psychiatric Review Technique form regarding Plaintiff's mental limitations. (Tr. 492-505). Determining that Plaintiff suffered from depressive disorder, the doctor concluded that Plaintiff satisfied the Part A criteria for Section 12.04 (Affective Disorders) of the Listing of Impairments. (Tr. 493-501). The doctor determined, however, that Plaintiff failed to satisfy any of the Part B criteria for this particular Listing. (Tr. 502). Specifically, the doctor concluded that Plaintiff experienced moderate restrictions in the activities of daily living, moderate difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence or pace, and never experienced extended episodes of decompensation. (Tr. 502).

Dr. Pinaire also completed a Mental Residual Functional Capacity Assessment form regarding Plaintiff's limitations in 20 separate categories encompassing (1) understanding and memory, (2) sustained concentration and persistence, (3) social interaction, and (4) adaptation. (Tr. 488-91). Plaintiff's abilities were characterized as "moderately limited" in six categories. (Tr. 488-89). With respect to the remaining 14 categories, however, the doctor reported that Plaintiff was

"not significantly limited." (Tr. 488-89).

On September 15, 2008, Dr. V. Puri completed an assessment of Plaintiff's physical residual functional capacity. (Tr. 584-86). The doctor reported that Plaintiff can "occasionally" lift/carry 5 to 10 pounds. (Tr. 584). The doctor reported that during an 8 hour day, Plaintiff can stand/walk and sit for 60 to 90 minutes each. (Tr. 585). The doctor reported that Plaintiff would "very frequently. . .need to take unscheduled breaks/rest periods during the day" and, moreover, would be absent from work "about 3 days per month "as a result of [his] impairments or treatment." (Tr. 585).

On October 22, 2008, Plaintiff was examined by Dr. Norbert Anderson. (Tr. 619-20). The results of a mental status examination were as follows:

> He is alert and oriented to person, place, time, and situation. He appears to have at least average intelligence, but his mood is very dysthymic and anxiety is always present to the point of agoraphobia because he just avoids people, he cannot stand to even be around his brain-damaged brother in the mobile home. He speaks in a monotone, but otherwise he is easily understood. He speaks clearly and coherently and there is no evidence of psychosis. He has severe hopelessness and helplessness and this man currently had a suicidal plan because he states he thinks that his granddaughter and he can generally get pas[t] it even though he is essentially homeless and helpless and without any resources. He does have some anxiety and has a large amount of unresolved grief.
>
> Presently, I am sure that I am (sic) note in this file as he walks painfully and with difficulty and he takes pain medications and Xanax regularly in controlled doses and it helps to decrease his pain, but it certainly does not take it away. He has a CPAP machine for his sleep apnea and he said it is very uncomfortable, but he stays with it because, he feels, it will keep him alive.

(Tr. 619).

Plaintiff was diagnosed with major depression, recurrent and severe, with an impulse

7

control disorder. (Tr. 620). The doctor also reported that Plaintiff "has anxiety disorder with panic attacks and apparent agoraphobia avoiding all social contacts." (Tr. 620). Plaintiff's GAF score was rated as 50.[2] (Tr. 620).

On September 27, 2010, Plaintiff participated in a CT examination of his lumbar spine the results of which revealed "multilevel degenerative changes" as well as "central canal stenosis from L3-4 to L5-S1" with "no impingement of exiting or traversing nerve roots." (Tr. 648). On November 16, 2010, Plaintiff participated in an MRI examination of his lumbar spine the results of which revealed "moderate-to-severe bilateral L5 neuroforaminal stenosis, which may be compressing both L5 nerve roots." (Tr. 751).

## ANALYSIS OF THE ALJ'S DECISION

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[3] If the Commissioner can make a

---

[2] The Global Assessment of Functioning (GAF) score refers to the clinician's judgment of the individual's overall level of functioning. American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* 32 (4th ed. 1994) (hereinafter DSM-IV). A GAF score of 50 indicates that the individual is experiencing "serious symptoms or any serious impairment in social, occupational, or school functioning." DSM-IV at 34.

[3]
1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. 404.1520(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. 404.1520(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. 404.1520(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. 404.1520(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. 404.1520(f)).

dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining his residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and he can satisfy his burden by demonstrating that his impairments are so severe that he is unable to perform his previous work, and cannot, considering his age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528. While the burden of proof shifts to the Commissioner at step five, Plaintiff bears the burden of proof through step four of the procedure, the point at which his residual functioning capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

The ALJ determined that Plaintiff suffered from: (1) arthritis; (2) degenerative disc disease of the lumbar spine; (3) polycythemia vera; (4) splenectomy, status post 1981 motor vehicle accident; and (5) depression, severe impairments that whether considered alone or in combination with other impairments, failed to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (Tr. 13-15).

With respect to Plaintiff's residual functional capacity, the ALJ determined that Plaintiff retained the capacity to perform sedentary work subject to the following limitations: (1) he can occasionally perform pushing/pulling activities with his lower extremities; (2) he can occasionally climb, balance, stoop, kneel, crouch, and crawl; (3) he can occasionally perform

overhead reaching with his right dominant upper extremity; (4) he can frequently perform gross and fine manipulation activities with his upper extremities; (5) he must avoid concentrated exposure to hazards, operating or controlling moving machinery, or working at unprotected heights; (6) he can perform simple, routine, and repetitive tasks with occasional changes in the work setting; and (7) he can perform work that is isolated with only occasional supervision. (Tr. 15).

The ALJ determined that Plaintiff could not perform his past relevant work, at which point the burden of proof shifted to the Commissioner to establish by substantial evidence that a significant number of jobs exist in the national economy which Plaintiff could perform, his limitations notwithstanding. *See Richardson*, 735 F.2d at 964. While the ALJ is not required to question a vocational expert on this issue, "a finding supported by substantial evidence that a claimant has the vocational qualifications to perform <u>specific</u> jobs" is needed to meet the burden. *O'Banner v. Sec'y of Health and Human Services*, 587 F.2d 321, 323 (6th Cir. 1978) (emphasis added). This standard requires more than mere intuition or conjecture by the ALJ that the claimant can perform specific jobs in the national economy. *See Richardson*, 735 F.2d at 964. Accordingly, ALJs routinely question vocational experts in an attempt to determine whether there exist a significant number of jobs which a particular claimant can perform, his limitations notwithstanding. Such was the case here, as the ALJ questioned a vocational expert.

The vocational expert testified that there existed in the lower peninsula of Michigan approximately 6,000 jobs which an individual with Plaintiff's RFC could perform, such limitations notwithstanding. (Tr. 88-110). This represents a significant number of jobs. *See Born v. Sec'y of Health and Human Services*, 923 F.2d 1168, 1174 (6th Cir. 1990); *Hall v. Bowen*, 837 F.2d 272, 274 (6th Cir. 1988); *Martin v. Commissioner of Social Security*, 170 Fed. Appx. 369, 374 (6th Cir., Mar.

1, 2006).

I.         **The ALJ's Assessment of the Medical Opinion Evidence is Not Supported by Substantial Evidence**

As noted above, Dr. Puri opined that Plaintiff was, from an exertional standpoint, limited to a slightly greater extent than recognized by the ALJ. As discussed below, Dr. Marianne Osentoski, on several occasions, offered opinions regarding Plaintiff's non-exertional limitations that indicate that Plaintiff was more limited than recognized by the ALJ. Plaintiff asserts that he is entitled to relief because the ALJ did not provide sufficient rationale for affording less than controlling weight to these opinions.

The treating physician doctrine recognizes that medical professionals who have a long history of caring for a claimant and his maladies generally possess significant insight into his medical condition. *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). An ALJ must, therefore, give controlling weight to the opinion of a treating source if: (1) the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) the opinion "is not inconsistent with the other substantial evidence in the case record." *Gayheart v. Commissioner of Social Security*, 710 F.3d 365, 375-76 (6th Cir. 2013) (quoting 20 C.F.R. § 404.1527).

Such deference is appropriate, however, only where the particular opinion "is based upon sufficient medical data." *Miller v. Sec'y of Health and Human Services*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health and Human Services*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)). The ALJ may reject the opinion of a treating physician where such is unsupported by the medical record, merely states a conclusion, or is contradicted by substantial

medical evidence. *See Cohen*, 964 F.2d at 528; *Miller v. Sec'y of Health and Human Services*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health and Human Services*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)); *Cutlip v. Sec'y of Health and Human Services*, 25 F.3d 284, 286-87 (6th Cir. 1994).

If an ALJ accords less than controlling weight to a treating source's opinion, the ALJ must "give good reasons" for doing so. *Gayheart*, 710 F.3d at 376. Such reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." This requirement "ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule." *Id.* (quoting *Wilson v. Commissioner of Social Security*, 378 F.3d 541, 544 (6th Cir. 2004)). Simply stating that the physician's opinions "are not well-supported by any objective findings and are inconsistent with other credible evidence" is, without more, too "ambiguous" to permit meaningful review of the ALJ's assessment. *Gayheart*, 710 F.3d at 376-77.

If the ALJ affords less than controlling weight to a treating physician's opinion, the ALJ must still determine the weight to be afforded such. *Id.* at 376. In doing so, the ALJ must consider the following factors: (1) length of the treatment relationship and frequency of the examination, (2) nature and extent of the treatment relationship, (3) supportability of the opinion, (4) consistency of the opinion with the record as a whole, (5) the specialization of the treating source, and (6) other relevant factors. *Id.* (citing 20 C.F.R. § 404.1527). While the ALJ is not required to explicitly discuss each of these factors, the record must nevertheless reflect that the ALJ considered those factors relevant to his assessment. *See, e.g., Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir.

2007); *Undheim v. Barnhart*, 214 Fed. Appx. 448, 450 (5th Cir., Jan. 19, 2007).

### A. Dr. Puri

The ALJ agreed with Dr. Puri that Plaintiff was limited to the performance of a limited range of sedentary work. Nevertheless, to the extent that Dr. Puri opined that Plaintiff was more limited than articulated in his RFC, the ALJ afforded "little weight" to such. (Tr. 16). The ALJ determined that Dr. Puri's opinions were inconsistent with the medical record as a whole including the doctor's own contemporaneous treatment notes. This determination is supported by substantial evidence.

### B. Dr. Osentoski

On four occasions between February 5, 2008, and March 29, 2011, Dr. Osentoski completed an assessment of Plaintiff's mental residual functional capacity. (Tr. 692-93, 695-96, 730-31, 817-18). Each of these reports assessed Plaintiff's limitations in 20 separate categories encompassing: (1) understanding and memory; (2) sustained concentration and persistence; (3) social interaction; and (4) adaptation.

In her initial assessment, Dr. Osentoski reported that Plaintiff was "moderately limited" in 15 categories, "markedly limited" in two categories, and "not significantly limited" in three categories. (Tr. 817-18). In her May 23, 2008, and October 14, 2009 assessments, the doctor concluded that Plaintiff was "moderately limited" in six categories and "markedly limited" in 14 categories. (Tr. 695-96, 730-31). In her March 29, 2011 assessment, the doctor concluded that Plaintiff was "moderately limited" in four categories and "markedly limited" in 16 categories. (Tr.

13

692-93). These assessments defined "moderately limited" as "the individual's capacity to perform the activity is impaired." (Tr. 692, 695, 730, 817). These assessments defined "markedly limited" as "the individual cannot usefully perform or sustain the activity." (Tr. 692, 695, 730, 817).

While there existed minor variations between these latter three assessments, in all three assessments the doctor concluded that Plaintiff was "markedly limited" in the following areas: (1) the ability to maintain attention and concentration for extended periods; (2) the ability to work in coordination with or proximity to others without being distracted by them; (3) the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; (4) the ability to interact appropriately with the general public; (5) the ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes; (6) the ability to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness; and (7) the ability to respond appropriately to change in the work setting. (Tr. 692-93, 695-96, 730-31).

In its remand order, the Appeals Council specifically instructed the ALJ to properly consider Dr. Osentoski's opinions because she was Plaintiff's "treating physician." (Tr. 137-38). While the ALJ acknowledged the aforementioned evidence, the ALJ failed to properly assess such. As noted above, if the ALJ affords less than controlling weight to a treating physician's opinion he is required to determine the weight to be afforded such. The ALJ failed to indicate what weight (if any) he afforded Dr. Osentoski's opinions. Instead, the ALJ identified limited and discrete portions of the doctor's opinions with which he agreed and simply disregarded the fact that the majority of the doctor's opinions are simply inconsistent with his RFC determination. The closest that the ALJ

came to analyzing Dr. Osentoski's opinions was his suggestion that the doctor's opinions are somehow unreasonably inconsistent. This interpretation is not supported by the evidence. Rather, as discussed above, the doctor's opinions reflect her assessment that Plaintiff's condition deteriorated over time. Moreover, as discussed above, the doctor's opinions are actually quite consistent with respect to the general limitations which Plaintiff experiences. In sum, the ALJ improperly discounted Dr. Osentoski's opinions because he did so without providing any reasoning or rationale in support thereof.

II.        **The ALJ Considered Plaintiff's Impairments and Properly Assessed Plaintiff's Credibility**

Plaintiff next argues that the ALJ failed to consider that he suffers from fibromyalgia and experiences pain. It is clear from the ALJ's decision that he considered all of the evidence of record. This argument is, therefore, rejected. Plaintiff also argues that the ALJ improperly discounted his subjective allegations. As the ALJ observed, however, the objective medical evidence was inconsistent with Plaintiff's subjective allegations of disabling limitations, a sufficient rationale for discounting Plaintiff's subjective allegations. *See King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984); *Workman v. Commissioner of Social Security*, 105 Fed. Appx. 794, 801 (6th Cir., July 29, 2004); *Ritchie v. Commissioner of Social Security*, 540 Fed. Appx. 508, 511-12 (6th Cir., Oct. 4, 2013) ("an administrative law judge's credibility findings are virtually unchallengeable").

III.       **Remand is Appropriate**

While the Court finds that the ALJ's decision fails to comply with the relevant legal

standards, Plaintiff can be awarded benefits only if proof of her disability is "compelling." *Faucher v. Secretary of Health and Human Serv's*, 17 F.3d 171, 176 (6th Cir. 1994) (the court can reverse the Commissioner's decision and award benefits if all essential factual issues have been resolved and proof of disability is compelling). While the ALJ's decision is not supported by substantial evidence, there does not exist *compelling* evidence that Plaintiff is disabled. In sum, evaluation of Plaintiff's claim requires the resolution of factual disputes which this Court is neither authorized nor competent to undertake in the first instance. Accordingly, the Commissioner's decision must be reversed and this matter remanded for further factual findings.

## CONCLUSION

For the reasons articulated herein, the Court concludes that the ALJ's decision is not supported by substantial evidence. Accordingly, the Commissioner's decision is **reversed and the matter remanded for further factual findings pursuant to sentence four of 42 U.S.C. § 405(g)**. A judgment consistent with this opinion will enter.


Date:  September 30, 2014                           /s/ Ellen S. Carmody
                                                                     ELLEN S. CARMODY
                                                                     United States Magistrate Judge